UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLAINE A. HUEY,

    Plaintiff,

v.                                                                             Case No. 1:17-cv-256
                                                                             Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for supplement security income (SSI).

Plaintiff alleged a disability onset date of November 29, 2012. PageID.191. Plaintiff identified his disabling conditions as postural orthostatic tachycardia syndrome ("POTS") and Aspergers. PageID.184. Prior to applying for SSI, plaintiff completed the 12th grade. PageID.185. He has no work history. PageID.185. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 28, 2016. PageID.37-48. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

    **I.**      **LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42

1

U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

2

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of

3

March 4, 2014. PageID.39.[1] At the second step, the ALJ found that plaintiff had the following severe impairments: Asperger's syndrome, autonomic dysfunction, and chronic fatigue. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.40.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with the following nonexertional limitations. The claimant is limited to simple work, with occasional public contact, and to no fast-paced work.

PageID.42. The ALJ also found that plaintiff has no past relevant work. PageID.46.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.47. Specifically, the ALJ found that plaintiff could perform the requirements of sedentary and unskilled occupations in the region (the State of Michigan) as follows: semi-conductor bonder (1,480 jobs); document preparer (113,000 jobs); and table worker (22,000 jobs). PageID.47. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 4, 2014 (the date the application was filed) through January 28, 2016 (the date of the decision). PageID.47-48.

### III. DISCUSSION

Plaintiff set forth three issues on appeal:

---

[1] The ALJ made the following clarification on plaintiff's work history. "The claimant worked after the application date but this work activity did not rise to the level of substantial gainful activity. The claimant testified that he performed some part-time work after the alleged onset date, but he only earned $50.00. While probative of his ability to engage in work activity, his earnings are insufficient to meet the earnings guidelines for substantial gainful activity." PageID.39.

**A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician or the opinions of the consulting psychologists.**

Plaintiff's appeal brief is premised on the ALJ's failure to appreciate his medical condition, postural orthostatic tachycardia syndrome or "POTS." As one court explained:

> Given the potentially disabling nature of this disorder, it is worth pausing to generally describe its features. According to the National Institute of Neurological Disorders and Stroke:
>
>> Postural orthostatic tachycardia syndrome (POTS) is one of a group of disorders that have orthostatic intolerance (OI) as their primary symptom. OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up from a lying down position. The primary symptom of OI is lightheadedness or fainting. In POTS, the lightheadedness or fainting is also accompanied by a rapid increase in heartbeat of more than 30 beats per minute, or a heart rate that exceeds 120 beats per minute, within 10 minutes of rising. The faintness or light-headedness of POTS are relieved by lying down again. . . .
>
> http://www.ninds.nih.gov/disorders/postural_tachycardia_syndrome/postural_tachycardia_syndrome.htm[.]

*Hall v. Colvin*, No. 3:15CV00271, 2016 WL 3974181 at *2 (S.D. Ohio July 25, 2016), R&R adopted, 2016 WL 4594927 (Sept. 2, 2016).

The ALJ summarized plaintiff's testimony regarding his condition:

> At the hearing, the claimant alleged he is unable to work because he cannot stand more than 10 to 15 minutes and his onset of symptoms is worst when standing. He further alleged that his symptoms are sporadic and only lying down will relieve his symptoms. While he testified he had some benefit with dietary changes and lifestyle modifications, he alleged having symptoms two to three times per week for an hour up to two to three days. He also alleged losing consciousness at times for five to 20 minutes, but has never had to be resuscitated.

PageID.43.

First, plaintiff contends that the ALJ failed to properly evaluate the opinion of Vinayak Manohar, M.D. A treating physician's medical opinions and diagnoses are entitled to

5

great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Manohar's opinions as follows:

The claimant's treating cardiologist, Dr. Manohar has provided multiple opinions regarding the claimant's functional capacity. On September 3, 2014, Dr. Manohar completed a[n] opinion form indicating the claimant is able to stand and/or walk for less than two hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally lift up to 10 pounds, stoop, kneel, crouch, crawl, reach, handle, and finger; and never climb ladders, ropes, or scaffolds, or balance (Ex. 6F/1). Dr. Manohar opined the claimant does not need an assistive device to ambulate, but does need a sit-stand option; has a serious limitation maintaining focus/concentration; needs unscheduled breaks; would be off task 15 percent of the workday; and would likely miss at least three days of work per month (Ex. 6F/1-2). I give partial weight to Dr. Manohar's opinion as I concur with limiting the claimant to a sedentary work level due to the symptoms related to his autonomic dysfunction. However, the evidence does not support limiting the claimant to only occasional postural movements, reaching, and handling as well as no balancing or climbing ladders, ropes, or scaffolds. The physical examination findings throughout the record have been entirely normal and the claimant's described activities of daily living are consistent with the ability to perform postural movements without limitation. The claimant has also described using his computer for six or more hours per day, which suggests he is able to sit for an extended period and does not have difficulty concentrating or being off task. There is no evidence to support finding the claimant requires a sit-stand option or that he would be off task 15 percent of the day. Dr. Manohar fails to provide rationale for his opinion and thus these limitations are given little weight.

Dr. Manohar provided an additional statement on April 7, 2015, in which he opined the claimant could work in a climate controlled environment between 65-75 degrees Fahrenheit; should have job [sic] that is primarily sedentary, but should be able to have access to a couch or recliner when needed to prevent lightheadedness, dizziness, and passing out; should have unrestricted access to cold beverages; should not lift greater than five pounds unassisted or carry greater than five pounds; should not include sudden changes in position or motion as he can have lightheadedness with simple movements such as going from sitting to standing; and climbing stairs should be kept to a minimum (Ex. 9F/2). Again, I concur with Dr. Manohar that the claimant should be limited to a sedentary work level; however, I give little weight to his opinion that the claimant should have access to a couch, recliner, and cold beverages and should not lift greater than five pounds. As noted above, the record contains entirely normal objective physical findings. Furthermore, the claimant does not seek treatment with Dr. Manohar at a frequency one would expect if he had such a degree of symptoms that limited him to this extent. The claimant alleged having episodes two to three times per week, but his treatment has been quite limited and he has received only conservative treatment recommendations. The claimant was quite vague at describing his symptoms at the hearing and his reported activities of daily living are inconsistent with the limitations opined by Dr. Manohar. Thus, with the exception of the opinion regarding a sedentary work level, Dr. Manohar's opinion is given little weight.

PageID.45.

Based on the record, it appears to the Court that the ALJ's evaluation of Dr. Manohar's opinion is not supported by substantial evidence. The ALJ noted that "[t]he record shows a history of complaints related to dizziness and nauseous since the claimant's diagnosis with an autonomic dysfunction called postural orthostatic tachycardia syndrome by Vinayak Manohar, MD[.]" PageID.43. After plaintiff was diagnosed in November 2012, the doctor advised him "to increase his fluid intact [sic], drink coconut water, wear compression stockings, engaged in calf exercises and basic exercise, and avoid heat." *Id*. The doctor provided "conservative treatment recommendations limited to lifestyle modifications." *Id*. In March 2014, plaintiff "reported improvements in his blood pressure with aggressive hydration" and when he complained of ongoing nausea, lightheadedness, and dizziness, the doctor recommended the claimant increase his sodium intake and consume a gluten free diet. *Id*. Plaintiff declined referral to a gastroenterologist and medications. *Id*.

There is no question that plaintiff has POTS and is being treated for that condition. Dr. Manohar's report from November 8, 2012, refers to prescribing coconut water to increase potassium salts for presumed POTS. PageID.260. At that time, plaintiff's symptoms included dizziness, lack of energy, fatigue, difficulty walking, autonomic dysfunction, and vertigo. *Id*. On November 30, 2012, the doctor noted that plaintiff had a "markedly positive tilt table test" with a positive diagnosis for POTS and autonomic dysfunction. PageID.264. The doctor treated it with conservative measures to increase fluids (2-3 liters/day) and increase potassium intake to 400 mg daily. *Id*. On February 27, 2014, the doctor listed several lifestyle modifications to help him, noted that plaintiff was reluctant to start medication, and stated that if plaintiff did not show

improvements, they "will start salt loading or consider using medications like florinef." PageID.287. As discussed, *infra*, the doctor also prescribed midodrine to treat the condition.

Based on this record, Dr. Manohar's restrictions with respect to never climbing ladders, ropes and scaffolds or balancing, with occasional stooping, kneeling, crouching and crawling, appear consistent with plaintiff's condition. In addition, the doctor's statement that plaintiff work in a climate controlled area, have access to a couch or recliner, unrestricted access to cold beverages, with minimal climbing of stairs, and avoidance of "sudden changes in position or motion" seem consistent with plaintiff's condition.

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Manohar's restrictions.[2]

### B. The ALJ did not have substantial evidence to support his finding that plaintiff was not entitled to full credibility.

Next, plaintiff contends that the ALJ did not properly evaluate his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable,"

---

[2] While plaintiff's statement of errors also referred to the opinions of psychologists, plaintiff's brief did not address that claim in any detail. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

9

*Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ questioned plaintiff's credibility noting that "[f]ollowing a significant gap in treatment, the record shows the claimant returned to Dr. Manohar on April 7, 2015, but the treatment note fails to document any significant objective findings," that plaintiff's examination findings were "entirely normal," that the doctor prescribed midodrine, but "plaintiff testified that he has not taken the medication." PageID.43-44. The ALJ's statement that plaintiff had entirely normal examinations is inconsistent with the cardiologist prescribing plaintiff fluids, potassium, and a new medication to treat POTS. On June 10, 2015, the doctor noted that plaintiff's symptoms remained stable, that he was visiting for lightheadedness, dizziness, headache, nausea, numbness and fever, and that "[w]e will start midodrine 2.5mg qd for now and will increase to tid depending on how he is feeling." PageID.369.

With respect to the midodrine, the ALJ stated that "while Dr. Manohar prescribed midodrine medication, plaintiff testified that he has not taken the medication." PageID.44. The ALJ's statement is factually wrong. Plaintiff testified that he *took* the medication but it caused side effects:

> Q. And you -- and the doctor, Dr. Manny Heim, I believe he prescribed something for you called Mitidrine [phonetic].
>
> A. Mitidrine.

10

> Q. Maybe, yeah. Are you taking that?
>
> A. No.
>
> Q. And what was that for?
>
> A. That was to be [sic] my postural osteo cardio syndrome.
>
> Q. It was for your P-O-T-S?
>
> A. Yes.
>
> Q. But you are not taking it?
>
> A. No.
>
> Q. And why are you not taking it?
>
> A. It was me – it was giving me too many adverse effects. Essentially making my condition worse and giving me different symptoms.
>
> Q. Did you try it?
>
> A. I have.

PageID.86. The ALJ's decision did not address plaintiff's explanation for stopping the medication.

The ALJ also noted that plaintiff's daily activities ("he is able to attend to his personal care, care for a pet, prepare meals, perform household chores, go out alone, utilize public transportation, shop for groceries, manage his finances, and spend time with others . . . [and] he spends six hours or more using a computer every day") were inconsistent with disabling functional limitations. PageID.44. The ALJ can certainly take a claimant's daily activities into account. *See Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). However, in this case, it is unclear how plaintiff's daily activities were inconsistent with his alleged symptoms related to POTS. Dr. Manohar acknowledged that plaintiff could perform a limited range of sedentary work.

The question before the ALJ was whether plaintiff's limitations and workplace accommodations would preclude him from performing substantial gainful activity.

Finally, the ALJ cannot assess plaintiff's credibility until he has re-evaluated Dr. Manohar's opinions. Once that is accomplished, the ALJ can determine whether plaintiff's alleged symptoms are – or are not – consistent with those limitations. For these reasons, the ALJ's credibility determination is not supported by substantial evidence. *See Rogers*, 486 F.3d at 249. Accordingly, on remand, the ALJ should also re-evaluate plaintiff's credibility.

### C. The ALJ committed reversible error by failing to follow the vocational expert's answers to accurate hypothetical questions.

Finally, plaintiff contends that the ALJ should have accepted the vocational expert's (VE's) answers to hypothetical questions based upon the restrictions imposed by Dr. Manohar. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. Here, a question exists as to whether the ALJ's hypothetical questions posed to the VE should have included Dr. Manohar's opinions. Accordingly, on remand, the ALJ should also re-evaluate whether plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner

is directed to re-evaluate Dr. Manohar's opinions regarding plaintiff's limitations, plaintiff's credibility, and plaintiff's capacity to perform substantial gainful activity that exists in the national economy.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 28, 2018	/s/ Ray Kent
	United States Magistrate Judge